FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

# Aug 11, 2022

SEAN F. McAVOY, CLERK

1

2

3

4

5

# UNITED STATES DISTRICT COURT

6

# EASTERN DISTRICT OF WASHINGTON

7  CARMEN V.,[1]                    No. 4:20-cv-05167-MKD

              Plaintiff,

8                                       ORDER GRANTING PLAINTIFF'S
   v.                                   MOTION FOR SUMMARY
9                                       JUDGMENT AND DENYING
  KILOLO KIJAKAZI, ACTING               DEFENDANT'S MOTION FOR
10 COMMISSIONER OF SOCIAL                SUMMARY JUDGMENT
  SECURITY,[2]
11                                       **ECF Nos. 17, 18**
              Defendant.

12

13

_____

14  [1] To protect the privacy of plaintiffs in social security cases, the undersigned

15  identifies them by only their first names and the initial of their last names. *See*

16  LCivR 5.2(c).

17  [2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9,

18  2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo

19  Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further

20  action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 17, 18.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 17, and denies Defendant's motion, ECF No. 18.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

ORDER - 2

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded by regulation on other grounds*. Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in

ORDER - 3

any other kind of substantial gainful work which exists in the national economy."

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§

ORDER - 4

404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination,

the Commissioner must also consider vocational factors such as the claimant's age,

education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  *Id.*

      The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that 1) the claimant is

capable of performing other work; and 2) such work "exists in significant numbers

in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.*

*Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

      On May 26, 2018, Plaintiff applied both for Title II disability insurance

benefits and Title XVI supplemental security income benefits alleging a disability

onset date of April 28, 2018.  Tr. 15, 84, 95, 234-47.  The applications were denied

initially and on reconsideration.  Tr. 120-28, 131-44.  Plaintiff appeared before an

administrative law judge (ALJ) on November 5, 2019.  Tr. 33-73.  On November

15, 2019, the ALJ denied Plaintiff's claim.  Tr. 12-32.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through June 30, 2023, has not engaged in substantial gainful activity since April 28, 2018.  Tr. 17.  At step two, the ALJ found that Plaintiff has a severe mental impairment, conversion disorder.  *Id*.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 18-19.  The ALJ then concluded that Plaintiff has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> [Plaintiff] cannot do tasks that require depth perception or precise visual acuity (e.g., threading a needle, reading print smaller than regular newsprint, and driving a car); and he can have no exposure to hazards (e.g., unprotected heights, moving mechanical parts).

Tr. 20.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  Tr. 24.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as, dining room attendant, laundry worker II, and industrial cleaner.  Tr. 25.

ORDER - 7

Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of April 28, 2018, through the date of the decision. *Id*.

On July 23, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated the medical opinion evidence;

2. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

3. Whether the ALJ conducted a proper step-three analysis.

ECF No. 17 at 2.[3]

---

[3] The Court references the ECF page numbers imposed on the top center of the pleading as opposed to the page numbers listed on the bottom of the pleading.

ORDER - 8

**DISCUSSION**

**A. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in weighing the opinions of Lynne Jahnke, M.D.; Daniel Hanson, M.D.; Marja Adair, ARNP; and Mary Pine, PA-C.  ECF No. 17 at 15-21.

As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s) . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a

medical opinion or prior administrative medical finding" (including, but not

limited to, "evidence showing a medical source has familiarity with the other

evidence in the claim or an understanding of our disability program's policies and

evidentiary requirements").  20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore

the ALJ is required to explain how both factors were considered.  20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2).  Supportability and consistency are explained in

the regulations:

> (1) *Supportability.*  The more relevant the objective medical evidence
> and supporting explanations presented by a medical source are to
> support his or her medical opinion(s) or prior administrative medical
> finding(s), the more persuasive the medical opinions or prior
> administrative medical finding(s) will be.

> (2) *Consistency.*  The more consistent a medical opinion(s) or prior
> administrative medical finding(s) is with the evidence from other
> medical sources and nonmedical sources in the claim, the more
> persuasive the medical opinion(s) or prior administrative medical
> finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  The ALJ may, but is not

required to, explain how the other factors were considered.  20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2).  However, when two or more medical opinions

or prior administrative findings "about the same issue are both equally well-

supported . . . and consistent with the record . . . but are not exactly the same," the

ALJ is required to explain how "the other most persuasive factors in paragraphs

ORDER - 10

1  (c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3),

2  416.920c(b)(3).

3         The Ninth Circuit recently addressed the issue of whether the changes to the

4  regulations displace the longstanding case law requiring an ALJ to provide specific

5  and legitimate reasons to reject an examining provider's opinion.  *Woods v.*

6  *Kijakazi*, No. 21-35458, 2022 WL 1195334, at *3 (9th Cir. Apr. 22, 2022).  The

7  Court held that the new regulations eliminate any hierarchy of medical opinions,

8  and the specific and legitimate standard no longer applies.  *Id.* at *3-4.  The Court

9  reasoned the "relationship factors" remain relevant under the new regulations, and

10  thus the ALJ can still consider the length and purpose of the treatment relationship,

11  the frequency of examinations, the kinds and extent of examinations that the

12  medical source has performed or ordered from specialists, and whether the medical

13  source has examined the claimant or merely reviewed the claimant's records.  *Id.* at

14  *6.  However, the ALJ is not required to make specific findings regarding the

15  relationship factors.  *Id.*  Even under the new regulations, an ALJ must provide an

16  explanation supported by substantial evidence when rejecting an examining or

17  treating doctor's opinion as unsupported or inconsistent.  *Id.*

18         *1. Lynn Jahnke, M.D.*

19         On November 5, 2019, Dr. Jahnke, a testifying medical expert, provided an

20  opinion on Plaintiff's conditions.  Tr. 37-47.  Dr. Jahnke reviewed Plaintiff's

ORDER - 11

medical records contained in the record.  *Id*.  Dr. Jahnke stated that Plaintiff suffered from "a little bit of thoracic scoliosis," "a little bit of left eye dryness," "a little bit of glaucoma, treated," all of which were non-severe, and "a little problem with the tear-producing area in the . . . left eye," and "perhaps . . . a conversion disorder."  Tr. 37-39, 42.  Dr. Jahnke testified that the evidence supports a "somatoform-type disorder," Tr. 45, and remarked that "that he tends to have lots of symptoms with very little on physical exam."  Tr. 38.  When asked whether the conversion disorder was a medically determinable impairment, Dr. Jahnke did not provide a definitive conclusion because it was outside her area of expertise, indicating she was not "really competent to say that" and she would "defer that to a psychologist."  Tr. 45.  However, Dr. Jahnke testified she felt "competent" to testify in this case, because the examinations were "normal, normal, normal" and "fairly straightforward from a physiological standpoint."  Tr. 46.  Dr. Jahnke opined that there was nothing physiological that was "reasonably related to his symptoms."  Tr. 38.

Plaintiff argues the ALJ erred in his analysis of Dr. Jahnke's opinion.  ECF No. 17 at 20-21.  The ALJ stated Dr. Jahnke testified "the claimant's 10/10 pain was inconsistent with his consistently being able to sit in no apparent distress during physical examination."  Tr. 22.  However, Dr. Jahnke testified that Plaintiff's pain was a 10 out of 10, despite the fact that he was sitting comfortably

ORDER - 12

and had a normal gait and noted "he tends to have lots of symptoms with very little

on physical exam," and thus "he certainly may have either a conversion or a

somatoform disorder."  Tr. 38.  Dr. Jahnke did not opine that Plaintiff was

malingering or exaggerating his symptoms.

Throughout the decision, the ALJ similarly found that Plaintiff's symptoms

did not match the objective evidence and used this analysis to reject Plaintiff's

symptom claims and medical opinions.  Tr. 20-23.  The ALJ stated that the

discrepancies between the symptoms and observed behavior could not be

explained by conversion disorder, but rather demonstrated exaggeration.  Tr. 21.

However, the ALJ cited to a record where the provider stated there was "High false

negatives, possibly supporting functional/malingering theory on unqualified vision

loss."  Tr. 489.  Functional vision loss is a vision impairment that is psychological

based.  *Brewer v. Colvin*, No. C15-5703-JCC-BAT, 2016 WL 3251995, at *3

(W.D. Wash. June 14, 2016).  Thus, the provider's note indicates that the

examination could support either conversion disorder or symptom exaggeration.

The ALJ also cited to an examination that documented "numerous positive

Waddell's tests and nonorganic findings."  Tr. 395-97.  Waddell's signs can

demonstrate either malingering or conversion disorder.  *See Nonorganic Physical*

*Findings (Waddell Signs),* ENCYCLOPEDIA OF PAIN, 2007, available at

https://doi.org/10.1007/978-3-540-29805-2_2816 (last accessed July 1, 2022).  The

ORDER - 13

ALJ also cited to multiple examinations where the physical examination was not consistent with the reported symptoms.  Tr. 21.  However, it is consistent for an individual with reportedly impaired vision due to a conversion disorder to have normal examinations and inconsistencies between their reported limitations and the examination.  *See Conversion Disorder in Neuro-Ophthalmology*, available at https://eyewiki.aao.org/Conversion_Disorder_in_Neuro-Ophthalmology (last accessed July 1, 2022); *see also Nowling v. Colvin*, 813 F.3d 1110, 1113-14 (8th Cir. 2016).

An ALJ may not act as his own medical expert, since he is "simply not qualified to interpret raw medical data in functional terms."  *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *see Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (hearing examiner should not go outside the record to medical textbooks to make his "own exploration and assessment" as to a claimant's impairments); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").  Dr. Jahnke did not opine that Plaintiff's examinations demonstrate exaggeration.  Rather, the ALJ has improperly interpreted the medical evidence and found multiple pieces of evidence demonstrate symptom exaggeration, despite the fact that the evidence can demonstrate either conversion disorder or symptom exaggeration.  The ALJ offers his own determination that the discrepancies

ORDER - 14

demonstrate exaggeration and not conversion disorder, but the ALJ's

determination is not supported by substantial evidence.

The ALJ's error in acting as his own medical expert is compounded by the

lack of any psychological opinions rendered in this case. The ALJ found

Plaintiff's only severe impairment is conversion disorder. Tr. 17. Dr. Jahnke

testified that the appropriate specialist to opine on a conversion disorder would be

a psychiatrist or psychologist. Tr. 42-45. Plaintiff requested that the ALJ order a

psychiatric consultative examination, which the ALJ stated he would take under

consideration. *See* Tr. 72. However, the ALJ did not order a consultative

examination and does not offer a reason why it was not ordered. Tr. 15-26.

No psychologist or psychiatrist has examined Plaintiff, reviewed his records,

nor rendered an opinion on his functioning. At the initial and reconsideration

levels, Plaintiff had not yet been diagnosed with conversion disorder, and thus a

State agency psychologist did not review his case. *See* Tr. 85-94, 96-105. After

Dr. Egan, a neurologist, diagnosed Plaintiff with conversion disorder in November

2018, Tr. 623-25, Plaintiff was never seen by a psychologist or psychiatrist. An

ophthalmologist, rather than a psychologist or psychiatrist, examined Plaintiff and

reviewed his records for his labor and industry claim. Tr. 837. The

ophthalmologist stated conversion disorder is beyond his expertise and he cannot

comment on it, but that the effects of the conversion disorder should be

ORDER - 15

investigated.  Tr. 830.  At the hearing, Dr. Jahnke, who is an internist and not a

psychologist or psychiatrist, was called to testify, and she also stated conversion

disorder is beyond her expertise and she cannot opine on it.  Tr. 39, 44-45.

Plaintiff was seen for a counseling intake by a mental health counselor, but he

reported an eye injury that has caused an eye impairment and did not disclose his

conversion disorder diagnosis; thus, the counselor did not address the diagnosis.

Tr. 912-18, 923.  Plaintiff discussed with the counselor that he has a fear of losing

his eye and discussed the possibility of getting a glass eye to alleviate his eye pain.

Tr. 923, 929.  The counselor did not perform a full psychological evaluation, and

Plaintiff has not been seen by any other providers for psychological treatment.

The Social Security Administration has recognized the importance of having

a psychologist review cases in which the claimant has been diagnosed with a

mental impairment.  At the State agency level, when the claimant has a mental

impairment, adjudicators are required to make every reasonable effort to ensure a

psychological consultant completes the medical portion of the case review and any

applicable residual functional capacity assessment.  20 C.F.R. §§ 404.1617,

416.1017.  While Single Decision Makers have been allowed to resolve physical

claims without a medical consultant's signature, the regulations require that even

Single Decision Makers make every reasonable effort to have a psychological

consultant complete the medical portion of the case and any applicable residual

functional capacity assessment, whenever the claimant has a mental impairment. 20 C.F.R. §§ 404.906, 416.1406.

The ALJ erred in finding Plaintiff's conversion disorder to be a severe impairment, and finding Dr. Jahnke's opinion persuasive, yet rejecting Plaintiff's request for a psychological consultative examination without explanation, when a medical provider and testifying medical expert stated they could not opine on the issue, a psychologist or psychiatrist would be the appropriate specialist to address the issue, and further investigation into the issue was warranted. On remand, the ALJ is instructed to reconsider Dr. Jahnke's opinion. The ALJ should also obtain an opinion from a qualified expert, through a psychological consultative examination and/or testimony from a psychological or psychiatric expert, on Plaintiff's severe mental impairment(s), whether Plaintiff's impairment(s) meet or equal a listing, and Plaintiff's RFC. The ALJ should consider asking a medical expert's opinion on whether the evidence supports a finding that Plaintiff exaggerated his symptoms or whether the evidence demonstrates inconsistencies that are due to conversion disorder.

*2. Daniel Hanson, M.D.*

On April 11, 2019, Plaintiff had an independent medical evaluation conducted by an ophthalmologist, Dr. Hanson, who provided an opinion on Plaintiff's condition. Tr. 827-31. Dr. Hanson found that Plaintiff's symptoms "do

ORDER - 17

1   appear to be much more severe than expected given the mild findings on exam,"

2   however due to functional vision loss related to a conversion disorder, "it would be

3   expected that the physical could be normal or near normal despite much greater

4   loss in function."  Tr. 829.  Dr. Hanson opined "from a strictly ocular perspective,

5   Plaintiff should be able to work . . . although the lack of stereo vision may make

6   some situations more dangerous."  Tr.  830.  Dr. Hanson acknowledged the

7   conversion disorder was "beyond [his] expertise," and thus would not comment on

8   the extent, etiology, or prognosis of Plaintiff's condition.  *Id.*  Dr. Hanson also

9   noted that the "effects of a conversion disorder on vision and ability to work

10  should also be investigated."  *Id.*  The ALJ found Dr. Hanson's opinion regarding

11  whether Plaintiff should be able to work neither valuable nor persuasive.  Tr. 23.

12  The ALJ stated Dr. Hanson's opinion that Plaintiff's lack of stereo vision may

13  make some situations more dangerous is incorporated in the RFC.  *Id.*

14         Plaintiff argues the ALJ erred because the RFC does not fully address the

15  limitations set forth by Dr. Hanson.  ECF No. 17 at 19-20.  Plaintiff argues Dr.

16  Hanson's opinion was limited to the ocular perspective and not Plaintiff's

17  conversion disorder.  *Id.*  Tr. 23.  As the case is being remanded for the ALJ to

18  reconsider Dr. Jahnke's opinion, the ALJ is also instructed to reconsider Dr.

19  Hanson's opinion.

20

1          *3.  Marja Adair, ARNP*

2          In January 2019, Ms. Adair, Plaintiff's primary care provider, rendered two

3    opinions on Plaintiff's functioning.  On January 24, 2019, Ms. Adair wrote a letter

4    regarding Plaintiff's functioning.  Tr. 455.  Ms. Adair stated Plaintiff cannot work

5    in orchards due to a chronic eye condition; he must change positions frequently

6    throughout the day; and he cannot sit for more than 30 minutes at a time due to

7    pain.  *Id.*  On January 29, 2019, Ms. Adair completed a questionnaire regarding

8    Plaintiff's functioning.  Tr. 453-54.  Ms. Adair stated Plaintiff had been diagnosed

9    with chronic pain syndrome; lumbar pain with radiation down both legs; thoracic

10   radiculopathy; and current moderate episodes of depression.  Tr. 454.  Ms. Adair

11   opined Plaintiff would miss four or more days of work due to Plaintiff's level of

12   uncontrolled back pain and mental health.  Tr. 454.  The ALJ found Ms. Adair's

13   opinions were not persuasive.  Tr. 22-23.

14         As the case is being remanded for the ALJ to reconsider Dr. Jahnke's

15   opinion, the ALJ is also instructed to reconsider Ms. Adair's opinion.

16         *4.  Mary Pine, PA-C*

17         Ms. Pine was also Plaintiff's primary care provider and completed multiple

18   "activity prescription" forms in connection with Plaintiff's worker's compensation

19   claim.  Tr. 836-39, 841-42, 909.  In each form, Ms. Pine stated Plaintiff was not

20   released to work for month-long periods of time due to his vision impairment.  *See*

*id.*  The ALJ found the activity prescription forms were not persuasive.  Tr. 23.

As the case is being remanded for the ALJ to reconsider Dr. Jahnke's

opinion, the ALJ is also instructed to reconsider Ms. Pine's opinion.

**B**. **Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and

convincing in discrediting his symptom claims.  ECF No. 17 at 9-15.  An ALJ

engages in a two-step analysis to determine whether to discount a claimant's

testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL 1119029, at *2.

"First, the ALJ must determine whether there is objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or

other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

"The claimant is not required to show that [the claimant's] impairment could

reasonably be expected to cause the severity of the symptom [the claimant] has

alleged; [the claimant] need only show that it could reasonably have caused some

degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

omitted).  General findings are insufficient; rather, the ALJ must identify what

ORDER - 20

symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

ORDER - 21

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence.  Tr. 20.

The ALJ's evaluation of Plaintiff's symptom claims, and the resulting limitations largely relies on the ALJ's assessment of the medical evidence.  Having determined a remand is necessary to readdress the medical source opinions, any reevaluation must necessarily entail a reassessment of Plaintiff's subjective symptom claims.  Thus, the Court need not reach this issue.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.").

For the purposes of the remand, the Court notes that multiple pieces of evidence the ALJ cited to in support of the finding that Plaintiff exaggerated his symptoms may demonstrate conversion disorder rather than exaggeration, as discussed *supra*.  The ALJ also found that Plaintiff "reported he was able to help care for his children, pick up their toys, and go out alone." Tr. 21.  The ALJ referenced his earlier discussion of Plaintiff's activities, in which he noted that Plaintiff reported helping his wife with caring for a toddler and sometimes cleaning

ORDER - 22

up the toddler's messes. Tr. 20.  However, the ALJ did not set forth any analysis as to how these limited activities are inconsistent with Plaintiff's allegations.

The ALJ also found that Plaintiff's neurologist, Robert Egan, M.D., "proposed a specific treatment plan," and Plaintiff failed to pursue it for "no apparent reason." Tr. 21.  Dr. Egan stated his treatment algorithm involves having patients return to see him at regular intervals and beginning an antidepressant.  Tr. 623.  Dr. Egan instructed Plaintiff to return if his vision gets worse and suggested using artificial tears multiple times per day in his left eye.  Tr. 623-24.  The records are not clear whether Dr. Egan suggested Plaintiff return for regular appointments or to begin an antidepressant.

On remand the ALJ is instructed to reconsider Plaintiff symptom claims and set forth an analysis supported by substantial evidence.

**C. Step Three**

The ALJ found that Plaintiff's impairments and combinations of impairments did not meet or equal any listings, including Listings 2.02, 2.03, 2.04, and 12.07.  Tr. 19.  Plaintiff challenges the ALJ's consideration of Listing 2.02 and 12.07.  ECF No. 17 at 5-9.

The Listing of Impairments "describes for each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work

experience." 20 C.F.R. §§ 404.1525, 416.925. "Listed impairments are

purposefully set at a high level of severity because 'the listings were designed to

operate as a presumption of disability that makes further inquiry unnecessary.' "

*Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*,

493 U.S. 521, 532 (1990)). "Listed impairments set such strict standards because

they automatically end the five-step inquiry, before residual functional capacity is

even considered." *Kennedy*, 738 F.3d at 1176. If a claimant meets the listed

criteria for disability, she will be found to be disabled. 20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii).

"To meet a listed impairment, a claimant must establish that he or she meets

each characteristic of a listed impairment relevant to his or her claim." *Tackett*,

180 F.3d at 1099 (emphasis in original); 20 C.F.R. §§ 404.1525(d), 416.925(d).

"To equal a listed impairment, a claimant must establish symptoms, signs and

laboratory findings 'at least equal in severity and duration' to the characteristics of

a relevant listed impairment . . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original)

(quoting 20 C.F.R. § 404.1526(a)). "If a claimant suffers from multiple

impairments and none of them individually meets or equals a listed impairment,

the collective symptoms, signs and laboratory findings of all of the claimant's

impairments will be evaluated to determine whether they meet or equal the

characteristics of any relevant listed impairment." *Id*. However, "'[m]edical

equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three.'" *Id.* at 1100 (quoting 20 C.F.R. § 404.1526(a)).

The claimant bears the burden of establishing her impairment (or combination of impairments) meets or equals the criteria of a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). "An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." Social Security Ruling (SSR) 17-2P, 2017 WL 3928306, at *4 (effective March 27, 2017).

As the case is being remanded for the ALJ to reconsider Plaintiff's symptom claims, as well as to further develop the record, the ALJ is also instructed to reconsider the step three analysis.

**D. Remedy**

Plaintiff urges this Court to remand this case but does not request an immediate award of benefits. ECF No. 17 at 21; ECF No. 19 at 10.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

ORDER - 25

1   When the Court reverses an ALJ's decision for error, the Court "ordinarily must

2   remand to the agency for further proceedings."  *Leon v. Berryhill*, 880 F.3d 1041,

3   1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the

4   proper course, except in rare circumstances, is to remand to the agency for

5   additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*,

6   775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a number of Social Security

7   cases, the Ninth Circuit has "stated or implied that it would be an abuse of

8   discretion for a district court not to remand for an award of benefits" when three

9   conditions are met.  *Garrison*, 759 F.3d at 1020 (citations omitted).  Under the

10  credit-as-true rule, where (1) the record has been fully developed and further

11  administrative proceedings would serve no useful purpose; (2) the ALJ has failed

12  to provide legally sufficient reasons for rejecting evidence, whether claimant

13  testimony or medical opinion; and (3) if the improperly discredited evidence were

14  credited as true, the ALJ would be required to find the claimant disabled on

15  remand, the Court will remand for an award of benefits.  *Revels*, 874 F.3d at 668.

16  Even where the three prongs have been satisfied, the Court will not remand for

17  immediate payment of benefits if "the record as a whole creates serious doubt that

18  a claimant is, in fact, disabled."  *Garrison*, 759 F.3d at 1021.

19      The Court concludes the record has not been fully developed and further

20  administrative proceedings would serve a useful purpose to determine the impact

of Plaintiff's conversion disorder.  As such, the case is remanded for proceedings consistent with this Order.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED August 11, 2022.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 27